UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JOHN GRILL,

                                    Plaintiff,

                            - against -

PHILIP MORRIS USA, INC.,

                                 Defendant.
-----------------------------------------------------------------------x

05-CV-9174 (CS)

**MEMORANDUM DECISION
AND ORDER**

<u>Appearances</u>:

Jerome H. Block, Esq.
Amber R. Long, Esq.
Levy, Phillips & Konigsberg LLP
New York, New York
*Counsel for Plaintiff John Grill*

Thomas J. Quigley, Esq.
Winston & Strawn LLP
New York, New York
*Counsel for Defendant Philip Morris USA, Inc.*

<u>Seibel, J.</u>

       Before the Court is Defendant Philip Morris USA, Inc.'s ("Philip Morris") Motion for

Summary Judgment originally filed on October 23, 2006 (Doc. 20), and reasserted on September

13, 2007 (Doc. 70).

**I.  Background**

Plaintiffs John and Ann Grill[1] filed this action on October 28, 2005, invoking the Court's

diversity jurisdiction to assert state law claims against Defendant Philip Morris, the designer,

marketer, manufacturer and distributor of Marlboro cigarettes, for fraud, design defect (strict

liability), negligent design and testing, negligence in failing to warn outside of advertising or

promotion, negligent advertising and marketing, breach of implied warranty, and loss of

consortium.  (Doc. 1.)  Ann Grill, who was born on February 26, 1962, began smoking Marlboro

cigarettes at the age of twelve in 1974 or 1975, when she was in junior high school.  (Am.

Compl. ¶ 5; Def.'s Local Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1 Statement") ¶

7.)  Although she attempted to quit at the age of sixteen or seventeen when she learned about the

health risks of smoking, she found that she was addicted and was unable to quit.  (Def.'s 56.1

Statement ¶¶ 12, 55; Pl.'s Resp. to Def.'s 56.1 Statement and Counterstatement of Material

Disputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Statement") ¶¶ 11-12.)  She smoked at

least one pack of Marlboro cigarettes per day for over twenty years (Am. Compl. ¶ 6), and did

not quit smoking until she was thirty-eight years old in 2000 (Def.'s 56.1 Statement ¶ 13; Pl.'s

56.1 Statement ¶¶ 1-2).

On October 12, 2002, Ann Grill was admitted to the hospital for multiple symptoms

including pleuritic chest pains (Def.'s 56.1 Statement ¶ 14) and pain in her "lower area . . . near

[her] gallbladder," (Ann Grill Dep. 149, Apr. 20, 2006), which seemed to radiate towards the

middle of her epigastric area (Decl. of Jerome H. Block in Opp'n to Def.'s Mot. for Summ. J.

---

[1]  On August 29, 2007, John Grill was substituted as the sole Plaintiff for the purposes of
prosecuting this action on behalf of himself and the Estate of Ann Grill.  (Doc. 63.)  Thus, I will
refer to "Plaintiff" rather than "Plaintiffs" throughout this Memorandum Decision and Order.

("Block *Grill* Decl.") Ex. G ("Oct. 13, 2002 Putnam Hospital Center Admitting History and Physical")) and which the doctor described as "abdominal pain of unclear etiology" (*id.*).  On October 14, 2002, a CT scan[2] of her chest revealed a mass on her upper right pulmonary lobe. (Def.'s 56.1 Statement ¶¶ 15-16.)  The radiologist who interpreted the chest scan noted that "[p]rimary carcinoma cannot be excluded."  (*Id.* ¶ 19.)  On October 15, 2002, a pulmonary specialist reviewed the results and told Ann Grill that the lesion could be lung cancer but was more likely pneumonia.  The specialist then prescribed a two-week course of antibiotics and another CT scan to see whether the lesion would resolve.  (*Id.* ¶ 23; Pl.'s 56.1 Statement ¶ 23.) The lesion was biopsied in February 2003, and on February 24, 2003 she was diagnosed with adenocarcinoma in the lung.  (Am. Compl. ¶ 7; Def's 56.1 Statement ¶ 24; Pl.'s 56.1 Statement ¶ 17.)  Despite undergoing two surgeries, one in 2003 and the other in 2005, and chemotherapy treatments, she passed away in January 2007, at the age of forty-four, as a result of lung cancer. (Am. Compl. ¶¶ 1, 7-8.)

On January 3, 2006, Plaintiff voluntarily dismissed his negligent advertising and marketing and breach of implied warranty claims with prejudice.  (Doc. 10.)  Defendant filed a Motion for Summary Judgment on October 23, 2006.  (Doc. 20.)  Plaintiff filed an Opposition on November 17, 2006 (Doc. 31), and Plaintiff filed a Reply on December 11, 2006 (Doc. 36.)  In January 2007, before the Motion for Summary Judgment was decided, Plaintiff Ann Grill passed away as a result of lung cancer purportedly caused by smoking Marlboro Cigarettes.  (Doc. 54.)

---

[2] "A CT scan – also called computerized tomography or just CT – is an X-ray technique that produces images of [a patient's] body that visualize internal structures in cross section rather than the overlapping images typically produced by conventional X-ray exams." MayoClinic.com, CT Scan Definition, http://www.mayoclinic.com/health/ct-scan/MY00309 (last visited Sept. 3, 2009).

On August 29, 2007, the Hon. Charles L. Brieant, Jr.[3] ordered that Plaintiff John Grill be substituted as the sole Plaintiff for the purposes of prosecuting this action on behalf of himself and the Estate of Ann Grill.  He also ordered that the Motion for Summary Judgment be withdrawn without prejudice with leave to renew following a status conference with counsel and the Court on September 28, 2007.  (Doc. 63.)  On September 11, 2007, Plaintiff John Grill filed an Amended Complaint, which in addition to substituting John Grill as the sole Plaintiff and withdrawing the previously asserted claims for negligent advertising and marketing and breach of implied warranty, added a claim for wrongful death and limited the fraud and negligent failure to warn outside of advertising or promotion claim to the time period up to and including February 26, 2008, the date on which Ann Grill turned eighteen years old.  (Doc. 65.)  By Stipulation between the Parties, "so ordered" by Judge Brieant on September 13, 2007, Defendant's Motion for Summary Judgement was reasserted as to the Amended Complaint. (Doc. 70.)  On January 6, 2009, Plaintiff voluntarily dismissed with prejudice his claims for design defect under a strict liability theory and negligent design and testing.  (Doc. 76.)  Thus, the remaining claims in this action are fraudulent concealment until February 26, 1980, negligent failure to warn outside of advertising and promotion until February 26, 1980, wrongful death, and loss of consortium.   In accordance with this Court's December 19, 2008 Order (Doc. 74), which directed the Parties to file supplemental briefs in light of the recent decision by the United States Supreme Court in *Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008), and the recent decision by the New York Court of Appeals in *Adamo v. Brown & Williamson Tobacco Corp.*,

---

[3]  Judge Brieant, who originally presided over this action, passed away in July 2008, and on August 5, 2008, this action was transferred to me.  (Doc. 72.)

-4-

900 N.E.2d 966 (N.Y. 2008), the Parties filed simultaneous supplemental briefs on January 16, 2009 (Docs. 77, 78).

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  On a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party "to present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2); *see Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

"Where a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

## B.  Statute of Limitations

Defendant argues that Plaintiff's claims for negligent failure to warn and fraudulent concealment are barred by the three-year statute of limitations for negligence actions.  "Under New York law, the party invoking a statute of limitations bears the burden of proof for establishing such an affirmative defense." *Keating v. U.S. Lines, Inc.*, No. 04-CV-6614, 2006 U.S. Dist. LEXIS 37114, at *17 (S.D.N.Y. June 7, 2006) (citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004)).  New York Civil Practice Law and Rules ("C.P.L.R.") 214-c(2) provides that

> the three year period within which an action to recover damages for personal injury . . . caused by the latent effects of exposure to any substance . . . upon or within the body . . . must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

N.Y. C.P.L.R. 214-c(2) (2009).  C.P.L.R. 214-c is a "remedial measure" that "should be liberally construed to effectuate its purposes." *Wetherill v. Eli Lilly & Co.*, 678 N.E.2d 474, 479 (N.Y. 1997).  Construing "injury" within the meaning of C.P.L.R. 214-c, the New York Court of Appeals held that "the time for bringing the action begins to run under the statute when the injured party discovers the primary condition on which the claim is based." *Id.* at 475.

"Thus, in many cases, discovery of an injury occurs when the plaintiff is actually diagnosed as suffering from a particular condition or disease, even though unaware of its cause." *Bartlett v. Moore Bus. Forms, Inc.*, No. 96-CV-1632, 2000 U.S. Dist. LEXIS 8686, at *12 (N.D.N.Y Mar. 30, 2000).

With respect to Plaintiff's negligent failure to warn claim, Defendant contends that it is time-barred because it accrued on October 14 or 15, 2002, more than three years before Plaintiff commenced this action on October 28, 2005. On October 14, 2002, after she was hospitalized for symptoms including abdominal and chest pain, a CT scan revealed a lesion on Ann Grill's upper right lobe. (Def.'s 56.1 Statement ¶¶ 15-16.) Defendant claims that the following day, a pulmonary specialist who reviewed the results of the CT scan told Ann Grill that the lesion could conceivably be lung cancer. (*Id.* ¶ 19.) The Parties agree, however, that the pulmonary specialist believed the lesion was highly likely to be pneumonia, and prescribed a two-week course of antibiotics followed by another CT scan to see whether the lesion would resolve. (*Id.* ¶¶ 21-23; Pl.'s 56.1 Statement ¶¶ 21-23; Block *Grill* Decl. ¶ 120.) After the course of antibiotics, Ms. Grill felt much better, and although a November 1, 2002 CT scan showed the lesion was still present, it was smaller and her doctor continued to believe it was unlikely to be cancerous. (Block *Grill* Decl. Ex. M (Nov. 4, 2002 Notes of Dr. Agarwal).) Her doctor thus recommended against an invasive biopsy.[4] (*Id.* ¶ 130.) Only after she developed a cough and a December CT scan showed the lesion still present did the doctor recommend the biopsy that revealed her lung cancer. (*Id.* ¶¶ 132-136.) Accordingly, Plaintiff argues that his cause of action

---

[4] Defendant's expert agreed that because the lesion appeared to be getting smaller, it was appropriate to wait to perform a biopsy. (*See* Marleen Meyers, M.D. Dep. 28, Oct. 19, 2006.)

did not accrue until February 2002 because the primary condition that forms the basis of Plaintiff's claim is lung cancer, and the undisputed evidence shows that Ann Grill did not learn until February 2003, when a biopsy was performed, that she had lung cancer.  As such, the discovery of her injury did not occur within the meaning of C.P.L.R. 214-c until February 2003, "when [she was] diagnosed with the primary condition for which damages are sought." *Wetherhill*, 678 N.E.2d at 478 n.4.

While Ms. Grill "discovered" that she had some kind of chest lesion in October 2002, she reasonably did not discover that it was cancer until February 2003.  Given that in October 2002, the lesion was unaccompanied by coughing or shortness of breath and was consistent with pneumonia and in fact believed to be pneumonia by competent professionals, the mere existence of some kind of lesion is a "symptom[] that [is] too isolated or inconsequential to trigger the running of the Statute of Limitations under CPLR 214-c(2)."  *Wetherill*, 678 N.E.2d at 478 n.4; *see Cochrane v. AC and S, Inc.*, No. 92-CV-8841, 1998 U.S. Dist. LEXIS 14633, at *18-22 (S.D.N.Y. Sept. 18, 1998) (symptoms of shortness of breath and difficulty breathing were too "isolated and generic" to commence running of statute of limitations on claim based on asbestos-related disease).  Although Ms. Grill's doctors recognized the remote possibility of lung cancer in October 2002 (Def.'s 56.1 Statement ¶ 21; Pl.'s 56.1 Statement ¶ 21), the relevant inquiry for statute of limitations purposes is when the injured party became aware of the primary condition on which the plaintiff's claim is based.  *See Cochrane*, 1998 U.S. Dist. LEXIS 14633, at *13.  Because that occurred months later, Defendant has failed to meet its burden of showing that there are no issues of material fact as to whether Ann Grill should have, through the reasonable exercise of diligence, discovered that she had lung cancer before October 28, 2002.  *See id.*

(question of fact regarding when Plaintiff was first aware of primary condition – asbestosis –
where plaintiff went to emergency room complaining of shortness of breath, but symptoms were
not sufficiently severe to impact his life until later date); *Castiglione v. E.A. Morse & Co.*, 802
N.Y.S.2d 278, 280 (App. Div. 2005) (experience of some symptoms following exposure to
fumes from defendant's product were too isolated or inconsequential to trigger running of statute
of limitations); *Cabrera v. Picker Int'l, Inc.*, 770 N.Y.S.2d 302, 303 (App. Div. 2003) (primary
condition – chronic obstructive pulmonary disease – not discoverable through reasonable
diligence where "plaintiff complained of shortness of breath and had intermittent coughs, her
physical activities were not affected, she did not miss work"); *Johnson v. Exxon Corp.*, 685
N.Y.S.2d 530, 530 (App. Div. 1999) (symptoms were too isolated or inconsequential to trigger
running of statute of limitations under C.P.L.R. 214-c(2) where plaintiff experienced occasional
ailments from working with chemicals, but was always able to return to work after those
incidents); *Shafranek v. Long Island Processor, Inc.*, 762 N.Y.S.2d 799, 801-02 (Sup. Ct. 2003)
(defendants' motion for summary judgment denied where defendants presented insufficient
evidence regarding plaintiff's symptoms, whether they indicated a respiratory ailment, and their
frequency of occurrence and severity).

  Defendant also contends that the fraudulent concealment claim, which would ordinarily
be subject to a six-year statute of limitations for fraud claims, is barred by the three-year statute
of limitations applicable to negligence claims because this fraud claim is merely incidental to
Plaintiff's negligence claim.  (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Br.")
5-7.)  Plaintiff does not argue otherwise.  New York law prevents application of the six-year
statute of limitations "[w]here the allegations of fraud are only incidental to another cause of

action," and permits plaintiffs to invoke the six-year statute of limitations only "when there would be no injury but for the fraud." *N.Y. Seven-Up Bottling Co. v. Dow Chem. Co.*, 466 N.Y.S.2d 478, 480 (App. Div. 1983). In this case, Plaintiff's injury would have resulted from Defendant's negligent failure to warn even absent any fraud. Plaintiff claims that Defendant failed to warn[5] of the hazards of smoking of which it knew or should have known. "New York has decided that such a claim is governed by a three-year statute of limitations – a period that reflects the value judgment made by the Legislature concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Larkins v. Glaxo Wellcome, Inc.*, No. 98-CV-4960, 1999 U.S. Dist. LEXIS 8215, at *27 (E.D.N.Y. May 20, 1999) (alterations and internal quotation marks omitted). "Because the gist of the fraud cause of action [in this case] turns on a breach of the manufacturer's duty to warn of all potential" dangers in its product that it "knew, or, in the exercise of reasonable care, should have known to exist, applying the six year statute of limitations for fraud simply undermines the specific value judgment made for causes of action based on the breach of the duty to warn." *Id.* at *27-28 (internal citations and quotation marks omitted); *see Corcoran v. N.Y. Power Auth.,* No. 95-CV-5357, 1997 U.S. Dist. LEXIS 14819, at *17-18 (S.D.N.Y. Sept. 29, 1997) (fraudulent concealment claim subject to three-year statute of limitations where plaintiffs' claim alleging that defendant fraudulently concealed extent to which plaintiffs were exposed to radiation was incidental to claim for negligence, which was cause of plaintiff's injuries). Thus, Plaintiff's fraudulent concealment claim is subject to the three-year statute of

---

[5] "Where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent." *Martin v. Hacker*, 83 N.Y.2d 1, 9 n.1 (1993).

limitations for negligence.  As discussed above, however, Defendant has not sustained its burden

of showing that there are no issues of material fact as to whether Ann Grill should have

discovered through the reasonable exercise of diligence that she had lung cancer before October

28, 2002 – within the three-year statute of limitations for negligence claims.

    **B.  Preemption**

       **1.  Section 5(b) of the Federal Cigarette Labeling and Advertising Act**

       Defendant argues that Plaintiff's fraudulent concealment and negligent failure to warn

claims are expressly preempted by Section 5(b) ("Section 5(b)") of the Federal Cigarette

Labeling and Advertising Act ("Labeling Act"), which provides that "[n]o requirement or

prohibition based on smoking and health shall be imposed under State law with respect to the

advertising or promotion of any cigarettes the packages of which are labeled in conformity with

the provisions of this Act."  15 U.S.C. § 1334(b).  The purpose of the Labeling Act was to

> establish a comprehensive Federal program to deal with cigarette
> labeling and advertising with respect to any relationship between
> smoking and health, whereby – (1) the public may be adequately
> informed about any adverse health effects of cigarette smoking by
> inclusion of warning notices on each package of cigarettes and in
> each advertisement of cigarettes; and (2) commerce and the national
> economy may be (A) protected to the maximum extent consistent
> with this declared policy and (B) not impeded by diverse,
> nonuniform, and confusing cigarette labeling and advertising
> regulations with respect to any relationship between smoking and
> health.

15 U.S.C. § 1331.  The preemption provisions of the Labeling Act "express Congress'

determination that the prescribed federal warnings are both necessary and sufficient to achieve

its purpose of informing the public of the health consequences of smoking," and thus, states may

not "enforc[e] rules that are based on an assumption that the federal warnings are inadequate."

*Altria Group, Inc. v. Good*, 129 S. Ct. 538, 544 (2008).

Congress did not, however, intend to insulate tobacco companies from liability for inaccurate statements regarding the connection between smoking and health.  *Id.*; *accord Cipollone v. Liggett Group*, 505 U.S. 504, 519-20 (1992) (Section 5(b) only preempts "state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions.").  Thus, Section 5(b) "does not preclude all common-law claims that have some relationship to smoking and health." *Altria Group*, 129 S. Ct. at 544 ; *accord Cipollone*, 505 U.S. at 523 n.22 ("Congress was neither pre-empting nor saving common law as a whole – it was simply pre-empting particular common-law claims, while saving others."). "Rather, it pre-empts only *requirements and prohibitions – i.e.*, rules – that are based on smoking and health." *Altria Group*, 129 S. Ct. at 547 (emphasis in original).  "[T]he phrase 'based on smoking and health' modifies the state law rule at issue rather than a particular application of that rule." *Id.* at 545.  To determine whether a particular claim is preempted, the court must determine "'whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . with respect to . . . advertising or promotion, giving that clause a fair but narrow reading.'" *Id.* (quoting *Cipollone*, 505 U.S. at 524 (internal quotation marks omitted).).

### 1.  Fraudulent Concealment (until February 26, 1980)[6]

Plaintiff alleges that Defendant intentionally and fraudulently failed to disclose[7] to Ann

---

[6]  Plaintiff's claim is limited to the time period up to and including February 26, 1980, the date on which Ann Grill turned eighteen years old.  (Block *Grill* Decl. ¶ 6.)

[7]  Plaintiff indicated in his Memorandum of Law in Opposition to Philip Morris's Motion for Summary Judgment ("Pl.'s Opp'n") that he is not proceeding with his claim for fraudulent

Grill, during her teenage years, the deadly hazards and addictiveness of smoking.  (Am. Compl. ¶¶ 58-68.)  Plaintiff's claim is premised on the theory that tobacco industry scientists had gathered clear evidence regarding the addictiveness and harmfulness of smoking and not only failed to make this information publicly available (Decl. of Jerome H. Block in Opp'n to Defs.' Mot. for Summ. J. in *Clinton v. Brown & Williamson Holdings, Inc.*, 05-CV-9907 ("Block *Clinton* Decl.") ¶ 192; Expert Witness Report of Neil E. Grunberg, Ph.D 8), but contradicted it by claiming through industry groups that the research was inconclusive (Decl. of Michael K. Cummings, Ph.D, M.P.H. Decl. 14, 23-24, 29), and blocked efforts to educate the medical community and the public about it (Block *Clinton* Decl. ¶ 257; Cummings Decl. 36-37).  For example, Plaintiff alleges that in the early 1980s, Philip Morris prevented the publication in a scientific medical journal of a research paper regarding the addictiveness of smoking, and later required the scientists who conducted that research to sign agreements not to disclose the results.[8]  (Am. Compl. ¶ 52.)

Section 5(b) does not preempt Plaintiff's fraudulent concealment claim because it is directed at Philip Morris' failure to disclose material facts outside of advertising and promotion. In *Cipollone*, the plurality held that plaintiffs' "claims that [defendants] concealed material facts [we]re . . . not pre-empted insofar as those claims rel[ied] on a state-law duty to disclose such facts through channels of communication other than advertising or promotion."  *Cipollone*, 505

---

misrepresentation.  (Pl.'s Opp'n 3 n.1.)

[8]  Plaintiff also contends that in 1994, a congressional hearing was held before the House Subcommittee on Health and the Environment during which industry executives expressed their belief that smoking was not addictive and was not proven to cause cancer, and concealed the information they possessed regarding the addictiveness and dangerousness of smoking.  (Block *Clinton* Decl. ¶¶ 259-60; Cummings Decl. 28, 36.)

U.S. at 528; *see Altria Group*, 129 S. Ct. at 545.  As an example, the Court explained that a claim

based on the defendants' failure to fulfill a state law obligation to disclose material facts

regarding smoking and health to an administrative agency would not be preempted.  *Cipollone*,

505 U.S. at 528.

In this case, Plaintiff does not allege that Defendant should have provided more specific

warnings or that it should have disclosed additional facts through advertising or promotion.

Rather, Plaintiff alleges that Philip Morris had a duty pursuant to state law to disclose

information regarding the addictiveness and dangerousness of smoking through channels of

communication other than advertising or promotion – for example, that Philip Morris had a duty

not to conceal from the medical and scientific community the results of scientific research which

contradicted its other public statements.  (*See* Am. Compl. ¶ 52.)  Specifically, Plaintiff alleges

that Defendant as a product manufacturer had a duty pursuant to New York State common law to

disclose material facts through channels of communication other than advertising and

promotion.[9]  (Pl.'s Opp'n 13-14 (citing *Miele*, 770 N.Y.S.2d 386.)  Accordingly, Section 5(b)

does not preempt Plaintiff's claim.[10]  *See Tuosto v. Philip Morris USA, Inc.*, No. 05-CV-9384,

_____

[9]  "New York recognizes a cause of action to recover damages for fraud based on
concealment, where the party to be charged has superior knowledge or means of knowledge,
such that the transaction without disclosure is rendered inherently unfair."  *Miele v. Am. Tobacco
Co.*, 770 N.Y.S.2d 386, 391 (App. Div. 2003).  Plaintiff's claim is apparently that Defendant, as
the manufacturer of Marlboro cigarettes, had superior knowledge regarding the health effects
and addictiveness of smoking, which the medical and scientific communities as well as the
public lacked.  Defendant, therefore, had a duty to disclose such information outside of
advertising and promotion, especially after having taken steps to create doubts about the same, in
order to render its "transactions" – smokers' purchases of cigarettes – fair.  Having failed to do
so, Defendant breached its duty not to deceive.

[10]  Some courts have held that all fraudulent concealment claims by consumers against
tobacco companies based on the companies' failure to disclose information to the public beyond

-14-

2007 U.S. Dist. LEXIS 61669, at *21 (S.D.N.Y. Aug. 21, 2007) (claim that defendant failed to

disclose material facts regarding smoking and health not preempted because based on duty to

disclose facts through channels other than advertising and promotion); *Fabiano v. Philip Morris

Inc.*, 847 N.Y.S.2d 901 (Sup. Ct. 2007) (fraudulent concealment claim not preempted where

based on state law duty to disclose allegedly concealed material facts through channels of

communication other than advertising or promotion); *Miele*, 770 N.Y.S.2d at 391 (fraudulent

concealment claim not preempted where it was based on state law duty that requires party with

superior knowledge not to conceal material information which without its disclosure would

render transaction inherently unfair); *see also Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-

371, 2000 U.S. Dist. LEXIS 22223, at *16 (N.D.N.Y. Sept. 28 2000) (claim that defendant

actively concealed research results revealing dangers of smoking could avoid preemption if

---

what is required by federal law are preempted because "manufacturers of cigarettes can
ordinarily communicate directly with customers only through advertising and promotion." *Small
v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 603-04 (App. Div. 1998) (alternations and internal
quotation marks omitted).  In this Court's view, however, cigarette manufactures may
communicate with the public through channels outside of advertising and promotions.  "By
preserving some claims in *Cipollone* that were based, in part, on the duty to communicate
smoking and health information to the public (e.g., the communicative duties arising from
voluntary activities and research activities), the plurality envisioned continued avenues for
cigarette manufacturers to perform those duties through means other than the rigorously
controlled avenues of advertising, promotion and packaging."  *Rivera v. Philip Morris, Inc.*, 395
F.3d 1142, 1149 (9th Cir. 2005).  For example, Defendant, working with other cigarette
manufacturers created so-called research groups – the Tobacco Industry Research Committee
("TIRC") in 1954, which later split into two groups, the Tobacco Institute ("TI") in 1958 and the
Council for Tobacco Research ("CTR") in 1964 – that pledged to "investigate and make known
to the public facts about tobacco use in relation to human well-being" and to "encourage and
support qualified research scientists in their efforts to learn more about these complex
problems."  (Cummings Decl. 14-15.)  Despite these stated goals, they made public statements
outside of advertising and promotion that were misleading and specifically designed to create
doubt regarding the allegations that smoking caused cancer or diseases while they possessed
information to the contrary.  (*Id.* 20-23.)

plaintiff identified state-law duty which required defendant to disclose health hazards by means
other than advertising and promotion).

In addition, Plaintiff's fraudulent concealment claim is not preempted because it is not
predicated on a duty based on smoking and health, but rather on the more general duty not to
deceive, which under New York law is not limited to the advertising and promotion of a product.
The *Cipollone* Court found that plaintiff's fraudulent misrepresentation claims based on
statements made in advertising and promotion were not preempted because they were not
predicated "on a duty 'based on smoking and health,' but rather on a more general obligation –
the duty not to deceive." *Id.* at 258-29; *see Altria Group*, 129 S. Ct. at 545 ("*Cipollone* plurality
held that the plaintiff's claim that cigarette manufacturers had fraudulently misrepresented and
concealed a material fact was not pre-empted" because it "alleged a violation of the
manufacturers' duty not to deceive – a duty that is not 'based on' smoking and health").
Similarly, in *Altria Group*, the plaintiffs' claim that particular statements – "light" and "lowered
tar and nicotine" – were deceptive and induced them to purchase defendant's product, was not
preempted because "'the phrase 'based on smoking and health' fairly but narrowly construed
does not encompass the more general duty not to make fraudulent statements.'" *Id.* at 548
(quoting *Cipollone*, 505 U.S. at 529).  The state law duty itself, rather than a particular
application of that duty, is relevant to determining whether a claim is based on smoking and
health.  *See Altria Group*, 129 S. Ct. at 545.

In this case, Plaintiff's claim is not that Defendant should have included stronger or more
specific warnings, but that Defendant breached its state law duty not to deceive.  As such, his
claim is not preempted by Section 5(b).  *See Tuosto*, 2007 U.S. Dist. LEXIS 61669, at *21

-16-

(allegations that defendant failed to disclose material facts regarding smoking and health not preempted because it was based on duty not to deceive); *Gerrity v. R.J. Reynolds Tobacco Co.*, 399 F. Supp. 2d 87, 95-96 (D. Conn. 2005) (claim that "defendants falsely represented that they would research and disclose any health hazards posed by cigarettes, but contrary to their representations, they did not disclose – *i.e.*, warn the public about – any such health hazards" was not preempted because based on the duty not to deceive); *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 175 (D. Conn. 2000) (claims based on concealment of material fact, even those made in advertising and promotion, not preempted where plaintiff did not allege that defendant should have included additional warnings, because claims predicated on duty not to deceive; *Tomasino v. Am. Tobacco Co.*, 807 N.Y.S.2d 603, 605 (App. Div. 2005) (claim that tobacco manufacturers suppressed test results not favorable to tobacco industry and intentionally failed to disclose material facts regarding dangerousness and addictiveness of cigarettes not preempted by Section 5(b) because predicated on duty not to deceive); *Miele*, 770 N.Y.S.2d at 391 ("[s]ince the predicate duty underlying the plaintiff's fraudulent concealment claims is a state-law duty not to deceive . . . post-1969 fraudulent concealment claims" were not preempted).  In sum, Section 5(b) does not preempt Plaintiff's fraudulent concealment claim because it is not premised on a state law "requirement or prohibition based on smoking and health with respect to advertising or promotion."  *Cipollone*, 505 U.S. at 252.

### 2.  Negligent Failure to Warn Outside of Advertising and Promotion (until February 26, 1980)

Plaintiff alleges that Defendant had a duty to communicate to the public about the health hazards of smoking outside of the context of "advertising and promotion," and breached this duty by failing to warn consumers, including Ann Grill during her teenage years, of the dangers of smoking, including addiction and lung cancer.  (Am. Compl. ¶¶ 90-95.)  Plaintiff's theory is that Philip Morris communicated to the public directly or through its agents, including TIRC, TI and CTR, about smoking and health outside of advertising and promotion through public statements on television, newspaper, radio and other media; that it had a duty to do so truthfully; and that it breached that duty by failing to warn or advise the public about the specific hazards of smoking, including addiction and disease.  (*Id.*)  Specifically, Plaintiff alleges that Defendant sponsored statements by TIRC, TI and CTR insisting that the harmfulness and addictiveness of smoking was not conclusively established, but rather was an open question that required more extensive research.  (Clinton Decl. ¶ 218-21; Cummings Decl. 34.)  These statements, they contend, served to create doubts regarding the dangers of smoking.  (Clinton Decl. ¶ 222; Cummings Decl. 37.)  Plaintiff testified that if Philip Morris had made and she had seen when she was a teenager non-promotional public service announcements like those it has made in recent years regarding the addictiveness and harmfulness of smoking, she would not have begun smoking.  (Block *Grill* Decl. ¶ 39-42; Ann Grill Dep. 46-48.)

Plaintiff's negligent failure to warn claim is not preempted because it is based on Philip Morris' failure to warn outside of advertising and promotion.  Plaintiffs in *Cipollone* brought failure to warn claims based on two theories: (1) defendants were negligent in the way in which they tested, researched, sold, promoted and advertised their cigarettes, and (2) defendants did not

provide adequate warnings regarding the health consequences of smoking.  *Cipollone*, 505 U.S. at 524.  The Court in *Cipollone* found that failure to warn claims which required plaintiffs to show that defendants' "post-1969 advertising or promotions should have included additional, or more clearly stated, warnings" were preempted.  *Id.*; *see Tuosto*, 2007 U.S. Dist. LEXIS 61669, at *43-44 (negligent failure to warn claim preempted where it would impose affirmative duty on defendant to include stronger or more specific warnings regarding smoking and health on products and advertisements).  Those claims that relied only on defendants' "testing or research practices or other actions unrelated to advertising or promotion" were not, however, preempted. *Cipollone*, 505 U.S. at 525.

Here, Plaintiff does not contend that Philip Morris should have included additional or stronger warnings on its packages or in its advertisements.  Rather, Plaintiff contends that Philip Morris should have warned the public regarding the dangers of smoking through means outside of advertising and promotion, such as through its promised publication of scientific research to the medical community and to the public through public service announcements.  Given that the duty to warn under New York law does not appear to be limited to advertising and promotion, *see Ramirez v. Avery Berkel, Inc.*, No. 02-CV-6887, 2004 U.S. Dist. LEXIS 4510, at *23 (S.D.N.Y. Mar. 16, 2004) (question of fact as to whether "defendant had a duty to issue advisories and post-sale warnings" directing users of its product to take certain safety precautions); *Baker v. Eli Lilly*, 421 N.Y.S.2d 81, 85-86 (App. Div. 1970) (question of fact as to adequacy of drug manufacturer's means – including warning on package insert – of fulfilling its duty to bring information to attention of medical community), and that Plaintiff's claims are based on Defendant's failure to warn outside of advertising and promotions, Section 5(b) does

not preempt Plaintiff's claim, *see Rivera*, 395 F.3d at 1148 (failure to warn claim not preempted where predicated on state law duty that requires manufacturers to advise consumers of products' dangers, which warning is not required through advertising and promotion).

In addition, Plaintiff's negligent failure to warn claim is not preempted to the extent that it is based on a duty that Defendant voluntarily assumed, as opposed to a duty imposed by state law.  Plaintiff contends that Defendant voluntarily assumed the duty to communicate with the public outside of advertising and promotion, and therefore, the duty on which Plaintiff's claim is based cannot be said to have been imposed by state law.  Because Defendant "has repeatedly maintained [an] express obligation through statements released to the public," it has "expressly assumed (as opposed to a state imposing) the specific obligation to fully and accurately present the health effects of cigarette use to the American public." *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 388 (E.D.N.Y. 2000).  As such, the "Labeling Act does not immunize [it] from obligations it has accepted *on its own initiative* regarding the disclosure of smoking and health information."  *Id.* (emphasis in original) (internal quotation marks omitted); *cf. Cipollone*, 505 U.S. at 526 ("[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . *imposed under state law*' within the meaning of Section 5(b)." (emphasis in original)).  New York law provides that "[e]ven though one is under no obligation to speak with respect to a matter, if he or she undertakes to do so, either voluntarily or in response to inquiries, he or she is not only bound to state truthfully what is told, but must not suppress or conceal any facts within his or her knowledge which will materially qualify those stated; if the person speaks at all, he or she must make a full and fair disclosure."  WILLIAM H. DANNE, JR., NEW YORK JURISPRUDENCE § 95 (2d

ed. 2009).  Plaintiff's failure to warn claim, which is based "in part on allegations that defendants voluntarily assumed a special duty to protect the public by providing information about the effects of tobacco use" is not preempted "to the extent it alleges a breach of defendants' special duty because . . . the predicate duty is imposed not by the State but by the party assuming the obligation."  *Magnus v. Fortune Brands, Inc.*, 41 F. Supp. 2d 217, 223 (E.D.N.Y. 1999); *accord Blue Cross and Blue Shield of N.J., Inc.*, 113 F. Supp. 2d 345, 388 (claim based on defendants' assumption on their own initiative of an obligation to smokers to accurately present health risks of smoking not preempted because not imposed by state law).

*     *     *

This Court's holding that Section 9(b) does not preempt Plaintiff's fraudulent concealment and negligent misrepresentation claims is consistent with the purposes of the Labeling Act.  If Plaintiff were to prevail on either of his claims, no additional labeling or advertising regulations would be imposed on Defendant.  *See* 15 U.S.C. § 1331 (purposes of Labeling act include preventing "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health").  Plaintiff seeks only to hold Defendant liable for fraudulently concealing, through channels of communication outside of advertising and promotion, facts regarding the hazards of smoking up to 1980.  Accordingly, there is no danger of imposing on Defendant diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

### C.  Fraudulent Concealment – Summary Judgment

"New York recognizes a cause of action to recover damages for fraud based on

concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Miele*, 770 N.Y.S.2d at 391.  A claim for fraudulent concealment under New York law requires plaintiffs to show by clear and convincing evidence "(1) that the defendant failed to disclose material information that he had a duty to disclose, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bermuda Container Line Ltd. v. Int'l Longshoremen's Ass'n*, 192 F.3d 250, 258 (2d Cir. 1999) (internal citations and quotation marks omitted); *accord Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007). "Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact." *Miele*, 770 N.Y.S.2d at 391 (internal quotation marks omitted).

### 1. Failure to Disclose Material Information and Intent to Defraud

Defendant argues that Plaintiff's fraudulent concealment claim should be dismissed because the health risks and addictiveness of smoking were widely known and discoverable when Ann Grill began smoking in 1974 or 1975.  Defendant points to the expert report of Michael Leroy Oberg, Ph.D., which concludes that the American public was exposed to a great deal of information regarding the health hazards and addictiveness of smoking, and that this information had been widespread and commonly known for at least two decades before Ann Grill began smoking.  (Expert Report of Michael L. Oberg Ph.D 3.)   Plaintiff has, however, presented sufficient evidence to raise an issue of fact as to the public's knowledge regarding these issues.  "In cases where reasonable minds might disagree as to the extent of plaintiff's

knowledge of the hazard, the question is one for the jury."  *Miele*, 770 N.Y.S.2d at 390 (internal

quotation marks omitted).  Plaintiff has put forth evidence to show that Philip Morris was aware

of the dangers and addictiveness of smoking by the early 1960s, before Ann Grill began smoking

(Cummings Decl. 14), but repeatedly and consistently denied in public statements that smoking

was addictive and a cause of cancer (*id.* 30).  For example, evidence suggests that from the

1960s to the 1980s, Defendant concealed from the public the scientific information gathered by

tobacco industry scientists that showed the addictiveness of nicotine.  (Grunberg Expert Report

8.)  According to Plaintiff's expert, during this time, Defendant's "public statements helped

create doubt in the public[']s mind about the health risks of smoking."  (Cummings Decl. 30.)

Plaintiff has also presented evidence that teenagers in particular were ill-informed about the

dangers of smoking.  (Block *Clinton* Decl. ¶¶ 290-95.)  This evidence is not only sufficient to

raise an issue of fact as to whether Defendant purposefully and willfully concealed information,

but also raises an issue of fact as to the public's knowledge about the health risks and

addictiveness of smoking during the relevant time period.  *See Fabiano v. Philip Morris Inc.*,

847 N.Y.S.2d 901 (Sup. Ct. 2007) (issue of fact as to common knowledge regarding health

effects of smoking during time plaintiff smoked – 1956 to 1992 – and when current information

about hazards of smoking became common knowledge), *rev'd on other grounds*, 862 N.Y.S.2d

487 (App. Div. 2008); *Rose v. Am. Tobacco Co.*, 787 N.Y.S.2d 681 (Sup. Ct. 2004) (issue of fact

as to whether hazardous effects of smoking were common knowledge from 1950s to 1990s).

Given that the mix of information available to the public was allegedly distorted by Defendant's

knowingly false concealment of facts necessary to make its public statements not misleading, I

cannot say as a matter of law that it was plain to all members of the public that smoking was

addictive and caused cancer.[11]

### 2. Reliance

Defendant contends that Ann Grill did not start smoking in reliance on Defendant's failure to disclose information regarding the health risks of smoking.  In support of this contention, Defendant argues that Ann Grill could not identify a single statement made by Defendant that influenced her to smoke.  Plaintiff's claim, however, is for fraudulent concealment and not affirmative misrepresentation.  Thus, Plaintiff need not, as Defendant contends, point to a specific statement on which Ann Grill relied in starting to smoke, but rather must present evidence that she relied on Defendant's silence regarding the hazards and addictiveness of smoking in making her decision to smoke.  *See In re Kings County Tobacco Litig.*, 723 N.Y.S.2d 304, 306 (Sup. Ct. 2000) ("fraudulent concealment requires . . . proof that the consumer actually relied on the manufacturer's silence"); *see also* WILLIAM H. DANNE, JR., NEW YORK JURISPRUDENCE § 146 (2d ed. 2009) ("it must appear that the plaintiff relied on the defendant to disclose the fact or facts concealed and that the concealment was a moving inducement to the plaintiff's change of position").

Plaintiff has presented evidence that could permit a reasonable jury to find that she was misled by Defendant's silence.  For example, Ann Grill testified that when she was a teenager, if she had seen public service announcements similar to those made in recent years by Philip Morris regarding the health dangers and addictiveness of smoking – in other words, had

---

[11]   Even as late as 1994, Philip Morris's former CEO, William Campbell, declared under oath before the House Subcommittee on Health and the Environment that he believed that nicotine was not addictive and that smoking was not a proven cause of cancer.  (Cummings Decl. 28, 36.)

Defendant made statements outside of advertising and promotion that truthfully warned against, rather than concealed, the dangers of smoking – she would never have started smoking.  (*See* Ann Grill Dep. 46-48.)  While a jury may not believe that testimony, I cannot discredit it as a matter of law.  Similarly, as noted earlier, Defendant's alleged false statements altered the mix of information available to the public.  A jury should decide whether Ms. Grill might have made a different decision about smoking had Defendant's public statements reinforced the Surgeon General's warning, thus presenting a "united front," as opposed to the mixed messages that she apparently, as a teen, tuned out.  *See Rose*, 787 N.Y.S.2s 681 (whether smoker relied on Defendant's disinformation campaign presents fact issues for trial); *Inzerilla*, 2000 WL 34016364, at *8 (whether smoker relied on material discussion concerning cancer-causing properties of tobacco presents fact issue).

### 3.  Proximate Cause

Finally, Defendant asserts that its purported fraudulent concealment was not the proximate cause of Ann Grill's injuries because legally adequate warnings were on cigarette packages when she began smoking. "[P]roof that the allegedly fraudulent omission was a substantial factor in causing identifiable loss to the plaintiff" is "[e]ssential to [a] fraud claim." *Apollo H.V.A.C. Corp. v. Halpern Constr., Inc.*, 867 N.Y.S.2d 115, 117 (App. Div. 2008). Although it is undisputed that warnings were on cigarette packages when Ann Grill began smoking, Plaintiff has presented evidence to show that during the same time period, Defendant was concealing from the public information gathered by tobacco industry scientists that showed the harmfulness and addictiveness of smoking, and simultaneously making public statements which "helped create doubt in the public[']s mind about the health risks of smoking."

-25-

(Cummings Decl. 30.)  As discussed above, it is a fact issue whether the mix of information would have been altered in a way that would have affected Ms. Grill's decision to smoke had Defendant made truthful public statements about the dangers of smoking.

Moreover, there is evidence to show that even though Ann Grill continued to smoke after she became aware of the health hazards of smoking, she did so only because she was addicted. In fact, Ann Grill testified that she tried many times to quit smoking after she became aware that it was hazardous to her health but was unable to do so due to her addiction to nicotine.  The fact that Ann Grill continued smoking after she discovered that it was harmful to her health does not sever the link between Defendant's fraudulent concealment and her death, because she "allegedly learned of the carcinogenic properties of cigarettes at a time when addiction allegedly prevented her from acting upon that knowledge."  *Clinton v. Brown & Williamson Holdings, Inc.*, 498 F. Supp. 2d 639, 644 (S.D.N.Y. 2007) (quoting *Inzerilla*, 2000 WL 34016364, at *6). Indeed, her repeated efforts to quit after she says she learned of the dangers supports her claim that she would not have started smoking had the dangers been clear to the public then.  Thus, there is evidence sufficient to permit a reasonable jury to find that Defendant's fraudulent concealment was a substantial factor in her death as a result of lung cancer.

### D.  Negligent Failure to Warn – Summary Judgment

To state a claim for negligent failure to warn pursuant to New York law, a plaintiff must demonstrate that "(1) the manufacturer had a duty to warn; (2) the manufacturer breached such duty so that the product is rendered defective, i.e. reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered loss or damage."  *Rogers v. Westfalia Associated Techs.*, 485 F. Supp. 2d 121, 129 (N.D.N.Y 2007)

-26-

(internal quotation marks omitted).

### 1. Duty to Warn

Defendant argues it had no duty to warn about the health hazards and addictiveness of smoking because information regarding the health hazards of smoking have been widely disseminated in the United States since the 1950s, and Ann Grill was aware of the addictiveness and health risks of smoking throughout her smoking history.  In support of this argument, they point to evidence that she saw the warning labels on cigarettes and that her friend's father, who was a smoker, died of lung cancer.  Under New York law, there is no duty "to warn a consumer already aware through common knowledge or learning of a specific hazard." *Inzerilla*, 2000 WL 34016364, at *4 (internal quotation marks omitted).   As discussed above, however, Plaintiff has presented evidence sufficient to raise an issue of fact as to whether the health hazards and addictiveness of smoking were commonly known when she began smoking and became addicted.  Moreover, Plaintiff testified that she did not in fact know about the health hazards and addictiveness of smoking when she began smoking in 1974 or 1975.  (Ann Grill Dep. 24.)

### 2. Proximate Cause

Defendant asserts that Plaintiff has failed to submit evidence to show that the failure to warn was the proximate cause of Ann Grill's lung cancer and death.  They contend that she did not heed the Surgeon General's warnings and continued to smoke.  As discussed above, however, Plaintiff has presented enough evidence to create a fact issue as to whether Defendant's failure to warn regarding the hazards and addictiveness of smoking outside of marketing and promotions was the proximate cause of her injuries.

### D.  Derivative Claims

-27-

Plaintiff also brings derivative claims against Defendant for wrongful death and loss of

consortium.  Plaintiff contends that as a result of the injuries sustained by Ann Grill, Plaintiff

suffered a loss of her services, society, consortium and companionship.  (Am. Compl. ¶¶ 121-

24.)  Having denied Defendant's Motion for Summary Judgment as to Plaintiff's primary claims

for fraudulent concealment and negligent failure to warn, Defendant's Motion is similarly denied

with respect to Plaintiff's derivative claims.  *See Gotlin v. Lederman*, 616 F. Supp. 2d 376, 397

(E.D.N.Y. 2009) (denying defendants' motion for summary judgment with respect to wrongful

death and loss of consortium claims to the extent that motion was denied with respect to primary

claims); *Slobin v. Boasiako*, 859 N.Y.S.2d 906 (Sup. Ct. 2008) (defendant's motion for summary

judgment denied as to primary claim of negligence, so motion also denied as to wrongful death

and loss of consortium claims).

### F.  Punitive Damages

Defendant contends that Plaintiff's claim for punitive damages is barred by *res judicata*.

In 1997, the New York State Attorney General, along with Attorneys General for states around

the country, filed a *parens patriae* action against a number of cigarette manufacturers, including

Defendant, asserting various claims including one for punitive damages.  (Def.'s Br. Ex. P.)

The allegations in the *parens patriae* suit were that since the 1950s, the defendants acted

fraudulently in their attempts to raise doubt in the public's mind regarding the harmful effects of

smoking.  As a result of this action, New York State, together with forty-five other states,

executed a Master Settlement Agreement with cigarette manufacturers including Defendant.  (*Id.*

Ex. Q.)  This Master Settlement Agreement was reduced to a Consent Decree and Final

Judgment, which was upheld on appeal and resolved the punitive damages claims of all New

York State residents against the defendants.  (*Id.* Ex. R.)

Under New York law, *res judicata*, also called claim preclusion, prohibits "successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (internal citations and quotation marks omitted).

Applying this standard to the facts of this case, it is clear that Plaintiff's *res judicata*  bars Plaintiff's punitive damages claim.  First, there is no doubt that Plaintiff's claims and those brought by the New York State Attorney General are based on the same series of connected transactions.  Plaintiff and the New York State Attorney General both alleged that defendants engaged in fraudulent behavior to create doubt as to the hazards of smoking.  (*Compare* Am. Compl. ¶ 48 *with* Def. Br. Ex. P ¶ 2.)  Second, there was a final judgment on the merits in the *parens patriae* action.  *See Fabiano v. Philip Morris*, 862 N.Y.S.2d 487, 489 (App. Div. 2008) (New York Attorney General's action was concluded on the merits).  Finally, although Plaintiff was not a party to the *parens patriae* action, he is deemed to be in privity with the plaintiffs in that action because his interests with respect to his punitive damages claim were represented. *See id.* at 490.  The *parens patriae* action sought redress "not for particularized personal injury but for harm to the State and its residents generally."  *Id.*  Accordingly, *res judicata* does not bar Plaintiff's private claims for personal injury, but does bar his claim for punitive damages, because such claims "are quintessentially and exclusively public in their ultimate orientation and purpose."  *Id.* at 150.  While Plaintiff's punitive damages claim is "rooted in personal injury," for

it to succeed "the injury must be shown to be emblematic of much more than individually sustained wrong" and "to reflect pervasive and grave misconduct affecting the public generally." *Id.* at 490. Thus, *res judicata* bars Plaintiff's claim for punitive damages. *See id.* at 489-91 (plaintiff's punitive damages claim in personal injury action against cigarette manufacturers barred by *res judicata* because New York State Attorney General's *parens patriae* action resolved such claim finally and on the merits); *see also Clinton*, 498 F. Supp. 2d. at 653.

**III. Conclusion**

Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claim for punitive damages, but **DENIED** in all other respects. The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 20.) The Parties are directed to appear at a status conference on September 29, 2009 at 10:30 a.m.

SO ORDERED.

Dated: September 4, 2009
     White Plains, New York

CATHY SEIBEL, U.S.D.J.

-30-